Daniel M. Hattis (SBN 232141)
Paul Karl Lukacs (SBN 197007)
HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

*Attorneys for Plaintiff David Massaro
and the Proposed Classes*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID MASSARO,<br>For Himself,<br>As A Private Attorney General, and/or<br>On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FRONTIER COMMUNICATIONS PARENT, INC., and FRONTIER COMMUNICATIONS OF AMERICA, INC.,<br><br>Defendants. | Case No. 5:22-cv-01222<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CAL. CIVIL CODE § 1750;**<br><br>**(2) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17500;**<br><br>**(3) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff DAVID MASSARO, individually, as a private attorney general, and on behalf of all others similarly situated, alleges as follows, on personal knowledge and investigation of his counsel, against Defendant Frontier Communications Parent, Inc. and Frontier Communications of America, Inc.:

## I.    <u>INTRODUCTION AND SUMMARY</u>

1.    This case challenges a deceptive pricing scheme perpetrated by Frontier Communications Parent, Inc. and Frontier Communications of America, Inc., and their predecessors in interest (collectively, "Frontier") against their internet, phone, and television service customers. For years, Frontier has prominently advertised its service plans at particular, flat monthly rates that were locked in for a promotional period or term contract, without disclosing or including additional service charges for each of its services—an "Internet Infrastructure Surcharge" for internet service; a "VoIP Administrative Fee" for phone service; and a "Broadcast TV Surcharge" and a "Regional Sports Fee" (now combined into the "Sports/Broadcast TV Fee") for television service.

2.    The Internet Infrastructure Surcharge, VoIP Administrative Fee, and Sports/Broadcast TV Fee are not taxes or government fees. Rather, they are all disguised double-charges for Frontier's services. These service charges are set by and entirely in the control of Frontier, and are utilized by Frontier solely to line its own pockets.

3.    Frontier has utilized the Internet Infrastructure Surcharge, VoIP Administrative Fee, and Sports/Broadcast TV Fee to: (1) charge more per month for the services themselves without having to advertise the higher prices; and (2) as a way to covertly increase customers' rates, even during their promised fixed-rate promotional period or term contract.

4.    Through this fraudulent scheme Frontier has extracted from its California subscribers hundreds of millions of dollars in the past several years in Internet Infrastructure Surcharge payments, VoIP Administrative Fee payments, and Sports/Broadcast TV Fee payments.

5.    Plaintiff David Massaro, by this action, seeks a public injunction for the benefit of the general public to enjoin Frontier's unlawful advertising scheme as alleged herein.

6.    Plaintiff further seeks, on behalf of himself and a class and subclasses of similarly situated California consumers, restitution, pre- and post-judgment interest, and declaratory relief such that Frontier's practices alleged herein are declared as unlawful under California law. Plaintiff also seeks attorneys' fees and costs.

CLASS ACTION COMPLAINT

## II.   THE PARTIES

7.      Plaintiff David Massaro is a citizen and resident of San Bernardino County, California.

8.      Defendant Frontier Communications Parent, Inc., is a corporation chartered under the laws of Delaware, with its principal place of business in Connecticut.

9.      Defendant Frontier Communications of America, Inc., is a corporation chartered under the laws of Delaware, with its principal place of business in Connecticut.

10.      Defendants Frontier Communications Parent, Inc., and Frontier Communications of America, Inc., together with their predecessors in interest, are collectively referred to herein as "Frontier."

11.      Without formal discovery, Plaintiff is unable to determine what other subsidiaries of Frontier Communications Parent, Inc., or other entities and/or their predecessors in interest also engaged or assisted with the unlawful conduct pleaded herein. Plaintiff reserves the right to amend this Complaint to allege additional defendant parties after identifying them in discovery.

## III.   JURISDICTION AND VENUE

12.      **Subject Matter Jurisdiction**. The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d)(2)—*i.e.*, Class Action Fairness Act jurisdiction —because the amount in controversy exceeds the sum or value of $5 million (exclusive of interest and costs) and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant.

13.      **Personal Jurisdiction**. This Court has personal jurisdiction over Frontier because, without limitation: (1) Frontier has purposely availed itself of the privileges of conducting business activities in California; (2) Frontier currently maintains systematic and continuous business contacts with California including marketing, selling, and issuing its services to Plaintiff and other California consumers; and (3) Frontier has entered into contracts with Plaintiff and other California consumers to provide its services. Frontier has

sufficient minimum contacts with California to render the exercise of jurisdiction by this Court permissible.

14.     Venue is proper pursuant to 28 U.S.C. §1391 because Plaintiff Massaro resides in this District; many of the acts and transactions giving rise to this action occurred in this District; Frontier is authorized to conduct business in this District, has intentionally availed itself of the laws and markets within this District through distribution and sale of its services in this District, does substantial business in this District, and is subject to personal jurisdiction in this District.

## IV.     COMMON FACTUAL ALLEGATIONS

15.     Frontier provides internet, phone, and television services to over 3 million customers nationwide, including nearly 1 million customers in California. Frontier offers its services individually and as part of "bundled" service plans (e.g., where a customer subscribes to multiple services).

16.     At all relevant times, Frontier has aggressively advertised its service plans through pervasive marketing directed at the consuming public in California. This marketing has included television, radio, and online advertisements, as well as Frontier's own website.

17.     Throughout all of these channels, Frontier has for years prominently advertised its service plans at particular, flat monthly prices that were locked in for a promotional period or term contract of 12 months or longer, without disclosing or including additional service charges for each service—an "Internet Infrastructure Surcharge" for internet service; a "VoIP Administrative Fee" for phone service; and a "Broadcast TV Surcharge" and "Regional Sports Fee" (now combined into the "Sports/Broadcast TV Fee") for television service.

18.     **Internet Infrastructure Surcharge.** In November 2017, Frontier began padding all of its internet subscribers' bills with a newly invented $1.99 monthly charge it called the "Internet Infrastructure Surcharge." Frontier did not include the Internet Infrastructure Surcharge in the advertised and quoted prices for its internet service plans, and Frontier hid the Internet Infrastructure Surcharge in the customer bill in the "Taxes and Other Charges" section where it was lumped together with taxes and government fees. Frontier did

not define or explain the Internet Infrastructure Surcharge anywhere in the bill. In October 2018, Frontier increased the Internet Infrastructure Surcharge by $2.00—from $1.99 to $3.99 per month. In February 2021, Frontier increased the Internet Infrastructure Surcharge by another $3.00—from $3.99 to $6.99 per month.

19.     **VoIP Administrative Fee.** For several years, Frontier has been padding all of its phone subscribers' bills with an invented monthly charge it calls the "VoIP Administrative Fee." In May 2019, the VoIP Administrative Fee was $3.99 per month. Frontier did not include the VoIP Administrative Fee in the advertised and quoted prices for its phone service plans. Frontier provided no definition or explanation of the VoIP Administrative Fee in its monthly bills. In March 2021, Frontier increased the VoIP Administrative Fee by $2.00—from $3.99 to $5.99 per month. A year later, in March 2022, Frontier increased the VoIP Administrative Fee by another $1.00—from $5.99 to $6.99 per month. Frontier increased the VoIP Administrative Fee on all of its phone subscribers, even during a subscriber's fixed-price promotional period or term contract.

20.     **Broadcast TV Surcharge and Regional Sports Fee (now "Sports/Broadcast TV Fee").** For several years, Frontier has been padding all of its television subscribers' bills with an invented monthly charge it called the "Broadcast TV Surcharge." In May 2019, the Broadcast TV Surcharge was $5.49 per month. During this time Frontier also was padding most of its television subscribers' bills with another invented monthly charge it called the "Regional Sports Fee." In June 2020, the Regional Sports Fee was approximately $6.00. Frontier did not include the Broadcast TV Surcharge or the Regional Sports Fee in the advertised and quoted prices for its television service plans. Frontier hid the Broadcast TV Surcharge in the customer bill in the "Taxes and Other Charges" section where it was lumped together with taxes and government fees. Frontier did not define or explain the Broadcast TV Surcharge or the Regional Sports Fee anywhere on the bill. In late 2020, Frontier combined the Broadcast TV Surcharge and the Regional Sports Fee into a single $11.49 charge called the "Sports/Broadcast TV Fee." The Sports/Broadcast TV Fee was added to all television subscribers' bills, even if a subscriber had previously only been charged the Broadcast TV

Surcharge and even if the subscriber was currently in a fixed-price promotional period. In March 2021, Frontier increased the Sports/Broadcast TV Fee by $3.50—from $11.49 to $14.99. In March 2022, Frontier increased the Sports/Broadcast TV Fee again by $2.00— from $14.99 to $16.99. This Complaint will use the term "Sports/Broadcast TV Fee" to collectively refer to the Broadcast TV Surcharge, the Regional Sports Fee, and the Sports/Broadcast TV Fee.

21.     Frontier has utilized the Internet Infrastructure Surcharge, the VoIP Administrative Fee, and the Sports/Broadcast TV Fee to: (1) charge more per month for the services themselves without having to advertise the higher prices; and (2) as a way to covertly increase customers' rates, even during their promised fixed-rate promotional period or term contract.

22.     Through this fraudulent scheme Frontier has extracted hundreds of millions of dollars from its California subscribers (and billions more from its other subscribers nationwide) in the past several years in Internet Infrastructure Surcharge payments, VoIP Administrative Fee payments, and Sports/Broadcast TV Fee payments.

23.     Notably, Frontier's deceptive fees and false advertising practices have been investigated by state prosecutors in response to complaints from consumers.

24.     For example, in 2020, after receiving hundreds of complaints from consumers, **the Washington State Attorney General investigated Frontier and found that Frontier:**

- **"fail[ed] to adequately disclose taxes and fees during sales of cable, internet, and telephone services";**

- **"fail[ed] to adequately disclose its Internet Infrastructure Surcharge fee in advertising"; and**

- **"Misle[d] consumers by implying that the Internet Infrastructure Surcharge and other fees are mandatory and/or government-related fees."**

Assurance of Discontinuance at 4.[1] As part of a settlement with the Washington State

---

[1]     The Assurance of Discontinuance can be found at: https://agportal-s3bucket.s3.amazonaws.com/uploadedfiles/Another/News/Press_Releases/2020_07_07FrontierAOD.pdf. A July 8, 2020, press release from the Washington Attorney General discussing

Attorney General, Frontier was prohibited from charging the Internet Infrastructure Surcharge to any Washington consumer ever again and was forced to pay $900,000 to the State of Washington. *Id.* at 7, 14. Notably, Frontier then exited the state of Washington by selling all of its Washington customers and assets to Ziply Fiber, a Washington-based regional broadband provider.

### A. Frontier Made False and Misleading Statements About the Prices of Its Service Plans When Customers Signed Up.

25.     On its website, Frontier explicitly advertised and represented to consumers like Plaintiff that the advertised prices for its service plans included all of the monthly service charges, and that the monthly rate would be fixed during the specified promotional period or term contract. Frontier did not disclose or adequately disclose the existence or the amount of the Internet Infrastructure Surcharge, VoIP Administrative Fee, or Sports/Broadcast TV Fee (let alone their true nature or basis) prior to or at the time customers signed up for service. Additionally, Frontier did not disclose or adequately disclose the fact that it could and would increase the monthly price during the customer's locked-in rate period or contract by simply increasing one or more of these hidden and disguised service charges.

26.     Frontier engaged in the same misrepresentations and nondisclosures with consumers who signed up for Frontier's service plans over the phone, via internet chat, or at one of Frontier's brick-and-mortar stores. Frontier's sales and customer service agents quoted the same flat monthly prices as in Frontier's public advertising, and as a matter of policy never disclosed the Internet Infrastructure Surcharge, VoIP Administrative Fee, or Sports/Broadcast TV Fee, or the fact that Frontier could and would increase the monthly price during the customer's locked-in rate period by increasing these hidden service charges.

---

its investigation of Frontier and the Assurance of Discontinuance can be found at: https://www.atg.wa.gov/news/news-releases/ag-ferguson-frontier-northwest-will-pay-900000-over-hidden-fees-misrepresentation.

1

**B.      Frontier Continued to Deceive Customers After They Signed Up.**

2       27.     Frontier continued to deceive customers about the additional service charges and

3    the true monthly price of the services, even after the customers had signed up and were

4    paying for the services.

5       28.     After customers signed up for service, Frontier would send them misleading and

6    deceptive order confirmation emails regarding the services they ordered.

7       29.     For example, below is a screenshot of the order confirmation email Plaintiff

8    Massaro received on May 15, 2019:

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

**Order Confirmation Email Sent to Plaintiff Massaro (May 15, 2019)**

## Services Ordered

| | |
|---|---|
| FiOS Triple Play | $79.99 |
| $94.01 Discount For 24 Months | |
| Custom Essentials TV | |
| FiOS Digital Voice | |
| FiOS Internet 200/200 | |
| FiOS Quantum HD STB Wireless | $11.00 |
| FiOS Quantum Whole-Home DVR | $11.00 |
| FiOS TV Quantum Enhanced Experience - $10.00 Discount For 24 Months | $.00 |
| HBO - $5.00 Discount For 12 Months | $.00 |
| Epix | $5.00 |
| Starz®/Encore® | $5.00 |
| WiFi Router | $10.00 |
| Showtime - $5.00 Discount For 12 Months | $.00 |

### Estimated Taxes and Other Charges

| | |
|---|---|
| Video | $10.27 |
| Federal Taxes and Charges | $1.59 |
| State Taxes and Other Charges | $7.63 |
| VoIP Administrative Fee | $3.99 |

### Estimated Monthly Total — $145.47

### One Time Charges

| | |
|---|---|
| Equipment Delivery and Handling Fee | $9.99 |
| Estimated Partial Month Charges (3 Days Proration) | $14.55 |

### Total One Time Charges — $24.54

### Estimated Next Bill Total — $170.01

30.     The order confirmation email listed a monthly service plan price of $79.99 plus $10 for the Epix and Starz/Encore channels, plus equipment charges, plus a $9.99 "Equipment Delivery and Handling Fee," plus what appeared to be various legitimate taxes and federal, state and local government-related fees under the heading "Estimated Taxes and Other Charges."

31.     Noticeably missing from the order confirmation email were the mandatory Internet Infrastructure Surcharge and Broadcast TV Surcharge which Frontier would impose on each bill. Frontier did not list either charge in the order summary. Instead, Frontier hid the dollar amount of these extra costs under other line items which a reasonable consumer would assume were taxes or government-related charges. Frontier hid the existence of the monthly Internet Infrastructure Surcharge (which began at the rate of $3.99 on Plaintiff's first bill) by covertly subsuming that dollar amount into the $7.63 "State Taxes and Other Charges" line item in the "Estimated Taxes and Other Charges" section. Frontier hid the existence of the monthly Broadcast TV Surcharge (which began at the rate of $5.49 on Plaintiff's first bill) by covertly subsuming that dollar amount into the $10.27 "Video" line item in the "Estimated Taxes and Other Charges" section.

32.     Frontier disguised the VoIP Administrative Fee as a tax or government-related charge by likewise listing it in the "Estimated Taxes and Other Charges" section, rather than in the services section of the order confirmation. Further, if a consumer then searched for and found the VoIP Administrative Fee on Frontier's website, the consumer would be presented with false and misleading representations that the Fee was a government pass-through charge—including Frontier's statement that the VoIP Administrative Fee is "an administrative fee to recover some of the government and other fees that we incur for VoIP service" (emphasis added).[2]

33.     After the service was installed and the customer was already committed to his or her service, the customer would receive his or her monthly billing statement. But, far from

_____

[2]     *See* https://frontier.com/helpcenter/categories/billing/read-and-pay-my-bill/understand-my-bill-residential/bill-sections/taxes-and-surcharges (last accessed 7/4/2022).

constituting even a belated disclosure, the monthly billing statements served to further
Frontier's scheme and deception.

34.     For example, Frontier disguised the Network Infrastructure Charge by listing it
as something separate from the internet service, even though it is in fact an invented
mandatory double-charge for the same internet service quoted in the service plan price.
Frontier buried the Internet Infrastructure Surcharge in the bill at the end of a long list of
taxes and nearly a half-dozen legitimate government surcharges, such as the CA State 911
VOIP Surcharge and Teleconnect Fund Surcharge.

35.     Likewise, Frontier disguised the Broadcast TV Surcharge, the Regional Sports
Fee, and the Sports/Broadcast TV Fee by listing them as something separate from the service
package price. The charges were misleadingly grouped under "Taxes and Other Charges"
together with legitimate government-related fees such as (e.g., in Plaintiff's bills) the FCC
Regulatory Recovery Fee, the Yucaipa Franchise Fee, and the Yucaipa PEG Fee.

36.     Frontier similarly disguised the VoIP Administrative Fee by listing it as
something separate from the service package price.

37.     Frontier provided no definition or explanation of any of these disguised service
charges in its monthly bills. Thus, even if a customer noticed the Internet Infrastructure
Surcharge, the VoIP Administrative Fee, or the Sports/Broadcast TV Fee, the customer
would reasonably assume that they were legitimate government taxes or fees outside of
Frontier's control.

**C.     The Internet Infrastructure Surcharge, the VoIP Administrative Fee, and the Sports/Broadcast TV Fee Are Double-Charges for Service.**

38.     Deep within Frontier's website—where, by design, it is unlikely to be viewed by
consumers, and certainly not before they purchase their service plans—Frontier admits that
the Internet Infrastructure Surcharge, the VoIP Administrative Fee, and the Sports/Broadcast
TV Fee are all double-charges for its services. These buried admissions reinforce the fact that
these undisclosed charges should have been included in the advertised monthly price for the
services because they are basic costs of providing the services themselves. A reasonable

- 11 -

consumer would expect the advertised price for these services to include all costs necessary to provide said services.

39.     **The Internet Infrastructure Surcharge is a double-charge for internet service.** Frontier had a specific "Internet Infrastructure Surcharge" webpage deep in its website where Frontier admitted that the Internet Infrastructure Surcharge was simply a double-charge for internet service. Under the question, "*What is the Internet Infrastructure Surcharge?*" Frontier admitted that the Internet Infrastructure Surcharge is a "Frontier-assessed surcharge, not a government surcharge." Frontier further stated that the Internet Infrastructure Surcharge is to cover costs associated with the customer's "continued access to high speed Internet service." Assuming this is true, customers would reasonably expect the cost of "access to high speed Internet service" to be *included* in the basic monthly rate Frontier charged *for that same internet service*. After all, the most fundamental part of offering a service is actually providing the customer "access" to said service. Providing access to the service cannot be an extra charge on top of the advertised price for the service itself.

40.     **The VoIP Administrative Fee is a double-charge for phone service.** As an initial matter and for clarification, all phone service provided by Frontier to its customers is via VoIP technology (voice over internet protocol).

41.     Frontier has a page on its website titled "Bill Increase Information," where Frontier admits that the VoIP Administrative Fee is a double-charge for phone service, stating: "This fee covers part of the rising costs of providing VoIP (voice over internet protocol). This is a Frontier fee, not a government fee."[3]

42.     Assuming this is true, customers would reasonably expect the cost of "providing VoIP" to be *included* in the basic monthly rate Frontier charges for the VoIP phone service. After all, the most fundamental part of offering a service is actually "providing" it to the

---

[3]     The "Bill Increase Information" page can be found at: https://frontier.com/resources/fee-changes.

customer. Providing the phone service cannot be an extra charge on top of the advertised price for the service itself.

43. **The Sports/Broadcast TV Fee, Broadcast TV Surcharge, and Regional Sports Fee are double-charges for television service.** On the same "Bill Increase Information" page, Frontier likewise admits that the Sports/Broadcast TV Fee is a double-charge for providing television service, stating: "This fee covers the rising costs of supplying local channels and sports networks. This is a Frontier fee, not a government fee." Again, customers would reasonably expect the cost of supplying television channels to be *included* in the basic monthly rate Frontier advertises for the television service itself.

**D.    Customers Cannot Cancel Without Penalty.**

44. If customers realize that they are being double-charged for the services they ordered after they receive their monthly bill, they cannot simply back out of the deal without penalty or cost, even if they notice one or more of the disguised additional service charges on their very first bill.

45. First, most customers, including Plaintiff David Massaro, were required to pay one-time charges on sign-up, such as installation or setup fees. In Mr. Massaro's case, he was required to pay a $9.99 "Equipment Delivery and Handling Fee." These initial one-time charges are non-refundable.

46. Second, most customers, including Plaintiff, signed up for a term contract that was subject to an early termination fee ("ETF") of up to $400. Frontier's General Residential Service Terms and Conditions has a "Time-Period Term Arrangements" section which states: "If you do not fulfill your commitment for the minimum term (or, if renewed, the renewal term), as agreed at the time you ordered service, you will be liable for and agree to pay to Frontier the applicable early termination fee ('ETF')."[4] Thus, even if a customer discovered the hidden double-charges on his or her very first bill, the customer needed to keep subscribing and paying those double-charges at least for the remainder of the term contract to

---

[4]    *See* https://frontier.com/~/media/corporate/terms/general-terms-residential.ashx?la=en (last accessed July 4, 2022).

avoid paying an ETF.

47.     Third, Frontier charges a $9.99 one-time additional cancellation fee to cancel broadband service, which Frontier euphemistically calls a "broadband processing fee," even if the customer is not currently in a term contract.

48.     Fourth, Frontier does not pro-rate cancellations. Customers must pay for the cost of the *entire* month even if they cancel on the very first day of the service month.[5]

49.     Fifth, Frontier typically requires customers to rent equipment to use exclusively with Frontier's services, such as modems, wireless routers, and digital cable converter boxes.

50.     Sixth, Frontier does not offer any sort of "money back guarantee" if a customer wishes to cancel his or her service right after it starts. Thus, there is no circumstance in which a customer can obtain a full (or even partial) refund if he or she discovers the hidden double-charges and wishes to cancel the services.

51.     Frontier's initial one-time non-refundable charges, term contracts with early termination fees of up to $400, additional $9.99 cancellation fee, refusal to provide a full (or even partial) refund even if a customer cancels on the very first day service starts, and refusal to pro-rate cancellations, are designed by Frontier to penalize and deter customers from cancelling after signing up. Frontier's policies are deliberately and knowingly designed by Frontier to lock customers in if and when they deduce that they are being charged more per month than advertised for Frontier's services.

52.     Because Frontier typically increased the Internet Infrastructure Surcharge, the VoIP Administrative Fee, and the Sports/Broadcast TV Fee by relatively small amounts ($1.00 to $3.00) each time in proportion to Frontier's total monthly charges, Frontier knew that its customers were unlikely to notice the increased charges on the total price of their monthly bills. Given that legitimate taxes and other government-related charges can already vary from month to month, Frontier knows that its customers reasonably expect small

---

[5]     The General Residential Service Terms and Conditions states: "your termination of Service may be effective on the last day of your Frontier billing cycle for all applicable Services, and you are responsible for all charges incurred through the date of termination. Installation or setup fees paid at the initiation of the Service, if any, are not refundable."

changes in the total amount billed each month. Frontier knows that its customers would not be readily able to tell that Frontier increased the service price via these disguised service charges by merely comparing the total amount billed in a particular month to the total amount billed in the prior month or months.

53.    Frontier also intentionally hid increases to the Internet Infrastructure Surcharge, the VoIP Administrative Fee, and the Sports/Broadcast TV Fee by providing no disclosure or explanation whatsoever anywhere on the first bill containing the price increase, other than listing the increased service charges themselves. Even a customer who read the entire bill would have zero notice that Frontier had increased one or more of the service charges or know whether or why his or her new monthly bill was higher than the prior month's total.

54.    And, even if customers noticed that Frontier imposed or increased the Internet Infrastructure Surcharge, VoIP Administrative Fee, or the Sports/Broadcast TV Fee (and learned that these charges were in fact disguised double-charges for the services), they would still have to pay penalties at that point if they wanted to cancel their Frontier services. Frontier drafted its contractual terms regarding cancellation fees and the like so that there are no exceptions, meaning these cancellation fees and similar costs would apply no matter how high Frontier chose to unilaterally increase these service charges.

55.    In any event, Frontier should have included the amounts of the Internet Infrastructure Surcharge, VoIP Administrative Fee, and Sports/Broadcast TV Fee as part of the advertised monthly price for its services. Failing to do so, in and of itself, constitutes an unfair and deceptive practice that is actionable under the claims pleaded herein. Frontier has used the charges to extract from its customers more than Frontier advertised for its services, and has used the charges as levers to covertly and improperly raise service rates on its existing customers, even during promised fixed-rate promotional periods or term contracts.

## PLAINTIFF'S FACTUAL ALLEGATIONS

56.    Plaintiff David Massaro is, and at all relevant times has been, a citizen and resident of San Bernardino County, California.

57.    In late April 2019, Mr. Massaro visited the Frontier website to learn about

Frontier's internet, phone, and television service plans for his residence in Yucaipa, California.

58. After browsing Frontier's service plan offerings, Mr. Massaro selected Frontier's FiOS Triple Play service plan which bundled internet, phone, and television at an advertised price of $79.99 per month plus equipment charges and what he assumed would be legitimate taxes and government-related fees. The plan he selected also included HBO at the $79.99 price for the first 12 months (priced at an additional $5 more per month in year two). Frontier advertised and promised this FiOS Triple Play plan as having this quoted price for a 24-month promotional period under a two-year contract subject to an early termination fee.

59. Based on these representations, Mr. Massaro reasonably believed that the advertised promotional price for the "triple play" service plan would be the full price he paid for internet, phone and television services, and that the price for these services would not increase during this 24-month period with the exception of the additional $5 for HBO in year two.

60. At no point during the online order process did Frontier disclose or adequately disclose the additional Internet Infrastructure Surcharge, VoIP Administrative Fee, or Broadcast TV Surcharge, or their amounts. At no point did Mr. Massaro view any mention of the existence of additional service charges. At no point was Mr. Massaro aware that Frontier would bill him any additional monthly internet service charges, phone service charges, or television service charges above the promised and advertised service plan price.

61. Based on these representations, Mr. Massaro submitted his online order for the FiOS Triple Play service plan.

62. Approximately a week after placing his order online, but prior to the installation and start of his Frontier service, Mr. Massaro decided that he wanted to add three premium channels (specifically, Epix, Starz/Encore, and Showtime) to his service plan. Mr. Massaro called Frontier via telephone and asked sales agents to add the three premium channels, which were an additional $5 each a month (of these, Showtime was free for the first 12 months). The sales agents reaffirmed to Mr. Massaro that he still had the same FiOS Triple

Play service plan for internet, phone and television services at $79.99 plus $10 for Epix and Starz/Encore (plus $10 in year two for HBO and Showtime), for the same 24-month promotional period under a two-year contract.

63.   When Mr. Massaro spoke to the Frontier sales agents to add the premium channels to his existing order, the sales agents never mentioned any additional service charges. The Frontier sales agents did not mention the Internet Infrastructure Surcharge, the VoIP Administrative Fee, the Broadcast TV Surcharge, or their amounts.

64.   On May 15, 2019, Frontier sent Mr. Massaro an order confirmation email detailing his finalized service plan including the additional premium channels. (A screenshot of that order confirmation email can be found above at Page 9.)

65.   The order confirmation email listed a monthly service plan price of $79.99 plus $10 for Epix and Starz/Encore, plus equipment charges, plus a $9.99 "Equipment Delivery and Handling Fee," plus what appeared to be various legitimate taxes and federal, state and local government-related fees under the heading "Estimated Taxes and Other Charges." Noticeably missing from the order confirmation email were the Internet Infrastructure Surcharge and Broadcast TV Surcharge. Frontier did not list either charge *anywhere* in the order summary. Instead, Frontier hid the extra costs of these service charges under other line items which a reasonable consumer would assume were taxes or government-related fees. Frontier hid the existence of the monthly Internet Infrastructure Surcharge (which began at the rate of $3.99 on Mr. Massaro's first bill) by covertly subsuming its amount into the $7.63 "State Taxes and Other Charges" line item in the "Estimated Taxes and Other Charges" section. Frontier hid the existence of the monthly Broadcast TV Surcharge (which began at the rate of $5.49 on Mr. Massaro's first bill) by covertly subsuming its amount into the $10.27 "Video" line item in the "Estimated Taxes and Other Charges" section. Frontier disguised the VoIP Administrative Fee as a tax or government-related charge by likewise listing it in the "Estimated Taxes and Other Charges" section, rather than in the services section.

66.     Mr. Massaro was not aware that Frontier would bill him any additional monthly service charges above the promised and quoted service plan price. Mr. Massaro reasonably assumed that any additional charges were equipment charges or legitimate taxes or government-related fees.

67.     During his first two years of service, Mr. Massaro did not realize that he was being charged additional service fees above and beyond the promised service plan price. Far from constituting even a belated disclosure, the monthly billing statements he received served to further Frontier's scheme and deception. Frontier disguised the Network Infrastructure Charge in the bill by listing it as something separate from the internet service, even though it was in fact an invented double-charge for the same internet service quoted in service plan price. Frontier buried the Internet Infrastructure Surcharge in the bill at the end of a long list of taxes and nearly a half-dozen legitimate government surcharges, such as the CA State 911 VOIP Surcharge and Teleconnect Fund Surcharge. Frontier disguised the Broadcast TV Surcharge in the bill by listing it as something separate from the television service package price, and misleadingly grouping it under "Taxes and Other Charges" together with legitimate government-related fees such as the FCC Regulatory Recovery Fee, the Yucaipa Franchise Fee, and the Yucaipa PEG Fee. Frontier similarly disguised the VoIP Administrative Fee in the bill by listing it as something separate from the service package price. Meanwhile, Frontier provided no definition or explanation of any of these disguised service charges in its monthly bills.

68.     Sometime in 2020, Frontier quietly combined the Broadcast TV Surcharge and the Regional Sports Fee and their amounts into a single $11.49 service charge called the "Sports/Broadcast TV Fee."

69.     In March 2021, Frontier further increased the service prices it charged Mr. Massaro—in the middle of his promised fixed-rate two-year contract—by $5.50 per month. Frontier increased the VoIP Administrative Fee from $3.99 to $5.99, and increased the Sports/Broadcast TV Fee from $11.49 to $14.99. There was no notice of these two increases in Mr. Massaro's March 2021 bill, so it was impossible to tell from the bill whether or why

the monthly total was higher than the previous month. When Mr. Massaro signed up for Frontier's services, Frontier never disclosed or adequately disclosed that it could, and would, increase the monthly service rate during Mr. Massaro's two-year purportedly fixed-rate contract by increasing invented service charges.

70. Mr. Massaro's two-year fixed price contract period ended on May 14, 2021. On Mr. Massaro's May 2021 bill, Frontier increased the Internet Infrastructure Surcharge from $3.99 to $6.99. On Mr. Massaro's March 2022 bill, Frontier further increased the VoIP Administrative Fee from $5.99 to $6.99 and the Sports/Broadcast TV Fee from $14.99 to $16.99.

71. Mr. Massaro first learned that the Internet Infrastructure Surcharge, the VoIP Administrative Fee, and the Sports/Broadcast TV Fee were not legitimate government-related charges—and that they were in fact disguised double-charges for Frontier's services—when it was brought to his attention by his counsel in late November 2021.

72. When Mr. Massaro signed up for Frontier's services, he was relying on Frontier's prominent representations regarding the 24-month fixed price for internet, phone and television services. Mr. Massaro did not expect (and Frontier did not tell him) that Frontier would actually charge more for these services through the imposition of three disguised Frontier service charges—the Internet Infrastructure Surcharge, the VoIP Administrative Fee, and the Broadcast TV Surcharge (later named the "Sports/Broadcast TV Fee"). Mr. Massaro also did not expect (and Frontier did not tell him) that Frontier could, and would, increase the monthly service rate during Mr. Massaro's 24-month fixed rate contract by increasing these disguised service charges. This information would have been material to Mr. Massaro. If Mr. Massaro had known that information, he would not have been willing to pay as much for the internet, phone, and television service plan, and he would have acted differently.

73. Mr. Massaro seeks recovery of the full amounts of the Internet Infrastructure Surcharges, the VoIP Administrative Fees, and the Broadcast TV Surcharges or Regional Sports Fees or Sports/Broadcast TV Fees charged to him by Defendants.

74.    Mr. Massaro has a legal right to rely now, and in the future, on the truthfulness and accuracy of Frontier's representations and advertisements regarding its service plan prices. Mr. Massaro believes that he was given the services Frontier promised him—just not at the price Frontier promised and advertised to him.

75.    Mr. Massaro continues to subscribe to the same Frontier service plan. Mr. Massaro desires to sign up for different Frontier service plans and/or sign up for another fixed-price promotional period or term contract (e.g., where Frontier promises a discounted and fixed service price for a specified period of time). However, Mr. Massaro wants to be confident that the advertised and quoted price for Frontier's service plans is the true and full price for the services (i.e., that it includes all applicable discretionary monthly service charges). Mr. Massaro also wants to be confident that Frontier is not going to increase the service price during any promised fixed-price period or contract (as Frontier previously did during Mr. Massaro's 24-month fixed-price contract) by imposing or increasing discretionary monthly service charges such as the Internet Infrastructure Surcharge, the VoIP Administrative Fee, or the Sports/Broadcast TV Fee. And, if Frontier introduces any new discretionary monthly service charge, Mr. Massaro wants to be confident that Frontier will include the amount of that service charge in the advertised and quoted service plan price. Mr. Massaro will be harmed if, in the future, he is left to guess as to whether Frontier's representations are accurate and whether there are omissions of material facts regarding the service plans being advertised and represented to him.

## CLASS ALLEGATIONS

76.    Plaintiff David Massaro brings this lawsuit on behalf of himself, and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

77.    **Class Definition**: Plaintiff Massaro seeks to represent the following Class:

> **All current and former Frontier customers in California who were charged an "Internet Infrastructure Surcharge," a "VoIP Administrative Fee," a "Sports/Broadcast TV Fee," a "Broadcast TV Surcharge," or a "Regional Sports Fee" within the applicable statute of limitations.**

78.    **Internet Infrastructure Surcharge Subclass Definition**: Plaintiff Massaro seeks to represent the following "Internet Infrastructure Surcharge" subclass:

> **All current and former Frontier customers in California who were charged an "Internet Infrastructure Surcharge" within the applicable statute of limitations.**

79.    **VoIP Administrative Fee Subclass Definition**: Plaintiff Massaro seeks to represent the following "VoIP Administrative Fee" subclass:

> **All current and former Frontier customers in California who were charged a "VoIP Administrative Fee" within the applicable statute of limitations.**

80.    **Sports/Broadcast TV Fee Subclass Definition**: Plaintiff Massaro seeks to represent the following "Sports/Broadcast TV Fee" subclass:

> **All current and former Frontier customers in California who were charged a "Sports/Broadcast TV Fee," a "Broadcast TV Surcharge," or a "Regional Sports Fee" within the applicable statute of limitations.**

81.    All claims and the Class and Subclass definitions are limited to claims which have not been discharged in bankruptcy. Based on information and belief, including based on Frontier's 2021 10-K Annual Report, none of the claims in this lawsuit were extinguished by Frontier's prior bankruptcy (from which Frontier emerged on April 30, 2021).[6]

82.    Specifically excluded from the Class are Frontier and any entities in which Frontier has a controlling interest, Frontier's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

83.    ***Numerosity.*** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff does not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises

---

[6] According to Frontier's 2021 10-K: "In connection with our emergence from bankruptcy, the Plan provided that holders of general unsecured claims, including, but not limited to, litigation claims against us and/or our subsidiaries, had their claims 'ride through' the bankruptcy, meaning there was no bar to or discharge of these claims. In particular, litigation claims against us survived the bankruptcy and those claims may be pursued against us. To the extent such claims could have been asserted prior to bankruptcy or arose during the bankruptcy, such claims can be asserted now that we have emerged from bankruptcy." *See* https://s1.q4cdn.com/144417568/files/doc_financials/2021/q4/FYBR-4Q21-10K.pdf.

hundreds of thousands of individuals. The exact number and identities of Class members are contained in Frontier's records and can be easily ascertained from those records.

84.   ***Commonality and Predominance.*** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

a.   Whether Frontier employed a uniform policy of charging the Internet Infrastructure Surcharge to its California customers who subscribed to internet service;

b.   Whether Frontier employed a uniform policy of charging the VoIP Administrative Fee to its California customers who subscribed to phone service;

c.   Whether Frontier employed a uniform policy of charging the Sports/Broadcast TV Fee and the Broadcast TV Surcharge and the Regional Sports Fee to its California customers who subscribed to television service;

d.   Whether Frontier adequately and accurately disclosed the existence of the Internet Infrastructure Surcharge, its nature or basis, or its amount, to Plaintiff and the Class;

e.   Whether Frontier adequately and accurately disclosed the existence of the VoIP Administrative Fee, its nature or basis, or its amount, to Plaintiff and the Class;

f.   Whether Frontier adequately and accurately disclosed the existence of the Sports/Broadcast TV Fee or the Broadcast TV Surcharge or the Regional Sports Fee, their nature or basis, or their amounts, to Plaintiff and the Class;

g.   What is the nature or purpose of the Internet Infrastructure Surcharge;

h.   What is the nature or purpose of the VoIP Administrative Fee;

i.   What is the nature or purpose of the Sports/Broadcast TV Fee or the Broadcast TV Surcharge or the Regional Sports Fee;

j.   Why did Frontier not include the amounts of the Internet Infrastructure Surcharge, the VoIP Administrative Fee, the Sports/Broadcast TV Fee, the Broadcast TV Surcharge, or the Regional Sports Fee in the advertised and quoted prices for its service plans

which included internet, phone, or television service, respectively;

k.      Whether the Internet Infrastructure Surcharge, the VoIP Administrative Fee, the Sports/Broadcast TV Fee, the Broadcast TV Surcharge, and the Regional Sports Fee, and the true prices of Frontier's service plans, are material information, such that a reasonable consumer would find that information important to the consumer's purchase decision;

l.      Whether Frontier's policy and practice of advertising and quoting the prices of its service plans without the Internet Infrastructure Surcharge, the VoIP Administrative Fee, the Sports/Broadcast TV Fee, the Broadcast TV Surcharge, or the Regional Sports Fee, is false, deceptive, or misleading;

m.      Whether Frontier's policy and practice of advertising and representing that the prices of its service plans were fixed and would not increase during a specified promotional period or term contract, when in fact Frontier reserved the right to (and did) increase service prices during that period by increasing the VoIP Administrative Fee, the Sports/Broadcast TV Fee, the Broadcast TV Surcharge, and the Regional Sports Fee, is false, deceptive, or misleading; and

n.      Whether Frontier's misrepresentations and misconduct alleged herein violate California Civil Code § 1750 *et seq.* (CLRA), California Business & Professions Code § 17500 *et seq.* (FAL), and California Business & Professions Code § 17200 *et seq.* (UCL).

85.    ***Typicality***. Plaintiff's claims are typical of Class members' claims. Plaintiff and Class members all sustained injury as a direct result of Frontier's standard practices and schemes, bring the same claims, and face the same potential defenses.

86.    ***Adequacy***. Plaintiff and his counsel will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests and is committed to representing the best interests of the Class. Moreover, Plaintiff has retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

87.     ***Superiority.*** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Frontier's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

88.     By its conduct and omissions alleged herein, Frontier has acted and refused to act on grounds that apply generally to the Class, such that final private injunctive relief and/or declaratory relief is appropriate respecting the Class as a whole.

89.     Frontier is primarily engaged in the business of selling services. Each cause of action brought by Plaintiff against Frontier in this Complaint arises from and is limited to statements or conduct by Frontier that consist of representations of fact about Frontier's business operations or services that is or was made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, Frontier's services or the statement is or was made in the course of delivering Frontier's services. Each cause of action brought by Plaintiff against Frontier in this Complaint arises from and is limited to statements or conduct by Frontier for which the intended audience is an actual or potential buyer or customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential buyer or customer.

**CAUSES OF ACTION**

**COUNT I**
**Violation of the Consumers Legal Remedies Act ("CLRA")**
**California Civil Code § 1750 *et seq*.**

90.     Plaintiff David Massaro realleges and incorporates by reference all paragraphs previously alleged herein.

91.     Plaintiff brings this claim in his individual capacity, in his capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class.

92.     Defendant is a "person," as defined by Cal. Civ. Code § 1761(c).

93.     Plaintiff and Class members are each "consumers," as defined by Cal. Civ. Code §1761(d).

94.     Frontier's internet, phone, and television service plans are "services," as defined by Cal. Civ. Code § 1761(b).

95.     The purchase of a Frontier service plan by Plaintiff and Class members is a "transaction," as defined by Cal. Civ. Code § 1761(e).

96.     Plaintiff and Class members purchased Frontier's service plans for personal, family, and/or household purposes, as meant by Cal. Civ. Code § 1761(d).

97.     Venue is proper under Cal. Civil Code § 1780(d) because a substantial portion of the transactions at issue occurred in San Bernardino County, which is within this federal judicial district. Plaintiff's declaration establishing that this Court is a proper venue for this action is attached hereto as **Exhibit A.**

98.     By its conduct and omissions alleged herein, Frontier has committed unlawful methods, acts or practices, including without limitation by:

a.      Misrepresenting the prices of Frontier's service plans and concealing the true prices of its service plans;

b.      Misrepresenting the prices of Frontier's service plans by advertising or quoting prices that did not include the monthly Internet Infrastructure Surcharge, VoIP Administrative Fee, Sports/Broadcast TV Fee, Broadcast TV Surcharge, or Regional Sports

1 | Fee;

2 |      c.     Failing to disclose or adequately disclose the existence, nature, and amount of the Internet Infrastructure Surcharge, VoIP Administrative Fee, Sports/Broadcast TV Fee, Broadcast TV Surcharge, and Regional Sports Fee when consumers signed up for Frontier's service plans;

     d.     Failing to ever adequately or accurately disclose the existence and nature of the Internet Infrastructure Surcharge, VoIP Administrative Fee, Sports/Broadcast TV Fee, Broadcast TV Surcharge, and Regional Sports Fee to its subscribers;

     e.     Increasing the Internet Infrastructure Surcharge, the VoIP Administrative Fee, the Sports/Broadcast TV Fee, the Broadcast TV Surcharge, and the Regional Sports Fee on existing customers without notice or adequate notice, including in the middle of promised fixed-rate promotional periods or contracts; and

     f.     Misrepresenting the nature of the Internet Infrastructure Surcharge, the VoIP Administrative Fee, the Sports/Broadcast TV Fee, the Broadcast TV Surcharge, and the Regional Sports Fee, including by representing or indicating that they were taxes or government-related charges in customers' order confirmation emails and on customers' monthly bills.

99.     The unlawful methods, acts or practices alleged herein to have been undertaken by Frontier were all committed intentionally and knowingly. The unlawful methods, acts or practices alleged herein to have been undertaken by Frontier did not result from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such error.

100.     Frontier's conduct alleged herein has violated the CLRA in multiple respects, including, but not limited to, the following:

     a.     Frontier represented that its service plans had characteristics that they did not have (Cal. Civ. Code § 1770(a)(5));

     b.     Frontier advertised its service plans with an intent not to sell them as advertised (Cal. Civ. Code § 1770(a)(9));

     c.     Frontier misrepresented that its service plans were supplied in accordance

with previous representations when they were not (Cal. Civ. Code § 1770(a)(16)); and

        d.    Frontier inserted unconscionable provisions in its consumer agreements, including, but not limited to, an arbitration clause which impairs the ability of customers to enforce their legal rights, in violation of California law (Cal. Civ. Code § 1770(a)(19)).

101.    With respect to any omissions, Frontier at all relevant times had a duty to disclose the information in question because, inter alia: (a) Frontier had exclusive knowledge of material information that was not known to Plaintiff and Class members; (b) Frontier concealed material information from Plaintiff and Class members; and (c) Frontier made partial representations, including regarding the supposed monthly rate of its service plans, which were false and misleading absent the omitted information.

102.    Frontier's misrepresentations deceive and have a tendency to deceive the general public.

103.    Frontier's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

104.    Plaintiff and Class members reasonably relied on Frontier's material misrepresentations, and would not have purchased, or would have paid less money for, Frontier's internet, phone, and/or television services had they known the truth.

105.    As a direct and proximate result of Frontier's violations of the CLRA, Plaintiff and Class members have been harmed and lost money or property in the amount of the Internet Infrastructure Surcharges, VoIP Administrative Fees, Sports/Broadcast TV Fees, Broadcast TV Surcharges, and Regional Sports Fees they have been charged and paid.

106.    Frontier's conduct has caused substantial injury to Plaintiff, Class members, and the general public.

107.    Frontier's conduct is ongoing in whole or in part and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Frontier absent a permanent injunction. Accordingly, Plaintiff seeks an order enjoining Frontier from committing such practices.

108.   Plaintiff lacks an adequate remedy at law to prevent Frontier's continued unlawful practices. Plaintiff will be harmed in the future by his inability to rely on the truthfulness and accuracy of Frontier's representations and advertisements regarding its service plan prices. Plaintiff desires and intends to sign up for different Frontier service plans and/or to sign up for another fixed-price promotional period or contract in the future. However, Plaintiff wants to be confident that the advertised and quoted price for Frontier's service plans is the true and full price for the services (i.e., that it includes all applicable discretionary monthly service charges). Plaintiff also wants to be confident that Frontier is not going to increase the service price during any promised fixed-price period by increasing discretionary monthly service charges such as the Internet Infrastructure Surcharge, the VoIP Administrative Fee, or the Sports/Broadcast TV Fee as Frontier has previously done. And, if Frontier introduces any new discretionary monthly service charge, Plaintiff wants to be confident that Frontier will include the amount of that service charge in the advertised and quoted service plan price. Plaintiff will be harmed if, in the future, he is left to guess as to whether Frontier's representations are accurate and whether there are omissions of material facts regarding the service plans being advertised and represented to him.

109.   Monetary damages are not an adequate remedy at law for *future* harm for the following reasons, without limitation: <u>First</u>, damages are not an adequate remedy for future harm because they will not prevent Frontier from continuing its unlawful conduct. <u>Second</u>, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know: (1) what service plan(s) Plaintiff may want or need in the future; (2) what Frontier's future VoIP Administrative Fees, Sports/Broadcast TV Fees, or disguised internet service fees will be (given that Frontier has increased the fees several times in the last few years, including as recently as March 2022); or (3) how many months Plaintiff would continue to subscribe to Frontier's services. Because these factors are unknown, damages are impossible to calculate and cannot be awarded for future harm. <u>Third</u>, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices,

the courts would be flooded with future lawsuits by the general public, Class members, and Plaintiff for future violations of the law by Frontier.

110.   Plaintiff, on behalf of himself and as a private attorney general, seeks public injunctive relief under the CLRA to protect the general public from Frontier's false advertisements, misrepresentations, and omissions. Specifically, Plaintiff seeks a permanent public injunction against Frontier under the CLRA as follows: (1) enjoin Frontier from falsely advertising the prices of its service plans to members of the general public; (2) enjoin Frontier from advertising or quoting a service plan price to members of the general public if that price does not include all applicable discretionary monthly service fees or service charges; and (3) enjoin Frontier from representing to members of the public that its own discretionary service charges are taxes, charges imposed to recover costs billed to Frontier by the government, pass-through government costs, government or regulatory fees, or charges over which Frontier has no control.

111.   In accordance with California Civil Code § 1782(a), Plaintiff, through counsel, served Frontier with notice of its CLRA violations by USPS certified mail, return receipt requested on June 24, 2022. As of July 13, 2022, Plaintiff has received no response from Frontier.

112.   If Frontier fails to provide appropriate relief for its CLRA violations by July 27, 2022 (i.e., 30 days from its receipt of Plaintiff's notification letter), Plaintiff will amend or seek leave to amend this Complaint to pray for compensatory and punitive damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b), along with attorneys' fees and costs.

## <u>COUNT II</u>
### Violation of the California False Advertising Law ("FAL")
### California Business and Professions Code § 17500 *et seq.*

113.   Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

114.   Plaintiff brings this claim in his individual capacity, in his capacity as a private attorney general seeking the imposition of public injunctive relief, and as a representative of

the Class.

115.   By its conduct and omissions alleged herein, Frontier has committed acts of untrue or misleading advertising, as defined by and in violation of California Business & Professions Code § 17500, *et seq.*, also known as California's False Advertising Law ("FAL"). These acts include but are not limited to:

a.   Misrepresenting the prices of Frontier's service plans and concealing the true prices of its service plans in its advertising;

b.   Misrepresenting the prices of Frontier's service plans by advertising or quoting prices in its advertising that did not include the monthly Internet Infrastructure Surcharge, VoIP Administrative Fee, Sports/Broadcast TV Fee, Broadcast TV Surcharge, or Regional Sports Fee; and

c.   Failing to disclose or adequately disclose the existence, amount, or nature of the Internet Infrastructure Surcharge, VoIP Administrative Fee, Sports/Broadcast TV Fee, Broadcast TV Surcharge, or Regional Sports Fee in its advertising.

116.   With respect to omissions, Frontier at all relevant times had a duty to disclose the information in question because, inter alia: (a) Frontier had exclusive knowledge of material information that was not known to Plaintiff and the Class members; (b) Frontier concealed material information from Plaintiff and the Class members; and (c) Frontier made partial representations, including regarding the supposed monthly prices of its services, which were false or misleading absent the omitted information.

117.   Frontier committed such violations of the FAL with actual knowledge that its advertising was untrue or misleading, or Frontier, in the exercise of reasonable care, should have known that its advertising was untrue or misleading.

118.   Frontier's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

119.   Frontier's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

120.   Plaintiff and members of the Class reasonably relied on Frontier's material misrepresentations and nondisclosures, and would not have purchased, or would have paid less money for, Frontier's services had they known the truth.

121.   By its conduct and omissions alleged herein, Frontier received more money from Plaintiff and Class members than it should have received, including the Internet Infrastructure Surcharges, VoIP Administrative Fees, Sports/Broadcast TV Fees, Broadcast TV Surcharges, and Regional Sports Fees that Frontier charged Plaintiff and the Class on top of the advertised price for the service plans, and that money is subject to restitution.

122.   By its conduct and omissions alleged herein, Frontier caused the demand for its service plans to be artificially increased and caused all customers of those plans, including Plaintiff and the Class, to pay premiums to Frontier.

123.   As a direct and proximate result of Frontier's violations of the FAL, Plaintiff and the Class members lost money.

124.   Frontier's conduct is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Frontier absent a permanent injunction. Accordingly, Plaintiff seeks an order enjoining Frontier from committing such practices.

125.   Plaintiff lacks an adequate remedy at law to prevent Frontier's continued unlawful practices, as previously discussed in Paragraph 108 above.

126.   Monetary damages are not an adequate remedy at law for future harm, as previously discussed in Paragraph 109 above.

127.   Plaintiff, on behalf of himself and as a private attorney general, seeks public injunctive relief under the FAL to protect the general public from Frontier's false advertisements, misrepresentations, and omissions. Specifically, Plaintiff seeks a permanent public injunction against Frontier under the FAL as follows: (1) enjoin Frontier from falsely advertising the prices of its service plans to members of the general public; (2) enjoin Frontier from advertising or quoting a service plan price to members of the general public if that price does not include all applicable discretionary monthly service fees or service

charges; and (3) enjoin Frontier from representing to members of the public that its own discretionary service charges are taxes, charges imposed to recover costs billed to Frontier by the government, pass-through government costs, government or regulatory fees, or charges over which Frontier has no control.

128.   Plaintiff seeks an order granting restitution to Plaintiff and Class members in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

## COUNT III

### Violation of the California Unfair Competition Law ("UCL")
### California Business and Professions Code § 17200 *et seq.*

129.   Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

130.   Plaintiff brings this claim in his individual capacity, in his capacity as a private attorney general seeking the imposition of public injunctive relief, and as a representative of the Class.

131.   California Business & Professions Code § 17200, *et seq.*, also known as California's Unfair Competition Law ("UCL"), prohibits any unfair, unlawful, or fraudulent business practice.

132.   Frontier has violated the UCL by engaging in the following ***unlawful*** business acts and practices:

      a.     Making material misrepresentations in violation of Cal. Civ. Code §§ 1770(a)(5), (9), and (16) (the CLRA);

      b.     Inserting unconscionable provisions in its consumer agreements, including, but not limited to, an arbitration clause which impairs the ability of customers to enforce their legal rights, in violation of California law (Cal. Civ. Code § 1770(a)(19));

      c.     Making material misrepresentations in violation of Cal. Bus. & Prof. Code § 17500 *et seq.* (the FAL); and

      d.     Engaging in deceit in violation of Cal Civ. Code §§ 1709–1710.

133.   Frontier has violated the UCL by engaging in the following **_unfair_** and **_fraudulent_** business acts and practices:

a.   Misrepresenting the prices of Frontier's service plans and concealing the true prices of its service plans;

b.   Misrepresenting the prices of Frontier's service plans by advertising or quoting prices that did not include the monthly Internet Infrastructure Surcharge, VoIP Administrative Fee, Sports/Broadcast TV Fee, Broadcast TV Surcharge, or Regional Sports Fee;

c.   Failing to disclose or adequately disclose the existence, nature, and amount of the Internet Infrastructure Surcharge, VoIP Administrative Fee, Sports/Broadcast TV Fee, Broadcast TV Surcharge, or Regional Sports Fee when consumers signed up for Frontier's service plans;

d.   Failing to ever adequately or accurately disclose the existence and nature of the Internet Infrastructure Surcharge, VoIP Administrative Fee, Sports/Broadcast TV Fee, Broadcast TV Surcharge, and Regional Sports Fee to its subscribers;

e.   Increasing the Internet Infrastructure Surcharge, VoIP Administrative Fee, Sports/Broadcast TV Fee, Broadcast TV Surcharge, and Regional Sports Fee on existing customers without notice or adequate notice, including in the middle of promised fixed-rate promotional periods or contracts;

f.   Preventing existing customers from freely canceling their services after learning the actual total monthly amount they are charged or learning of the Internet Infrastructure Surcharge, VoIP Administrative Fee, Sports/Broadcast TV Fee, Broadcast TV Surcharge, or Regional Sports Fee or increases to them; and

g.   Misrepresenting the nature of the Internet Infrastructure Surcharge, VoIP Administrative Fee, Sports/Broadcast TV Fee, Broadcast TV Surcharge, and Regional Sports Fee, including by representing or indicating that they were taxes or government charges in customers' order confirmation emails and on customers' monthly billing statements.

134.   With respect to omissions, Frontier at all relevant times had a duty to disclose

the information in question because, inter alia: (a) Frontier had exclusive knowledge of material information that was not known to Plaintiff and the Class; (b) Frontier concealed material information from Plaintiff and the Class; and (c) Frontier made partial representations, including regarding the supposed monthly prices of its services, which were false and misleading absent the omitted information.

135.   Frontier's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

136.   Frontier's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

137.   Plaintiff and members of the Class reasonably relied on Frontier's material misrepresentations and nondisclosures, and would not have purchased, or would have paid less money for, Frontier's services had they known the truth.

138.   By its conduct and omissions alleged herein, Frontier received more money from Plaintiff and Class members than it should have received, including the excess Internet Infrastructure Surcharges, VoIP Administrative Fees, Sports/Broadcast TV Fees, Broadcast TV Surcharges, and Regional Sports Fees that Frontier charged Plaintiff and the Class on top of the advertised price for the service plans, and that money is subject to restitution.

139.   By its conduct and omissions alleged herein, Frontier caused the demand for its service plans to be artificially increased and caused all customers of those plans, including Plaintiff and the Class, to pay premiums to Frontier.

140.   As a direct and proximate result of Frontier's unfair, unlawful, and fraudulent conduct, Plaintiff and the Class members lost money.

141.   Frontier's conduct and omissions alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and the Class. Perpetrating a years-long scheme of misleading and overcharging customers is immoral, unethical, and unscrupulous. Moreover, Frontier's conduct is oppressive and substantially injurious to consumers. By its conduct alleged herein, Frontier has improperly

extracted hundreds of millions of dollars from California consumers. There is no utility to Frontier's conduct, and even if there were any utility, it would be significantly outweighed by the gravity of the harm to consumers caused by Frontier's conduct alleged herein.

142.  Frontier's conduct is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Frontier absent a permanent injunction. Accordingly, Plaintiff seeks an order enjoining Frontier from committing such practices.

143.  Plaintiff lacks an adequate remedy at law to prevent Frontier's continued unlawful practices, as previously discussed in Paragraph 108 above.

144.  Monetary damages are not an adequate remedy at law for future harm, as previously discussed in Paragraph 109 above.

145.  Plaintiff, on behalf of himself and as a private attorney general, seeks public injunctive relief under the UCL to protect the general public from Frontier's false advertisements, misrepresentations, and omissions. Specifically, Plaintiff seeks a permanent public injunction against Frontier under the UCL as follows: (1) enjoin Frontier from falsely advertising the prices of its service plans to members of the general public; (2) enjoin Frontier from advertising or quoting a service plan price to members of the general public if that price does not include all applicable discretionary monthly service fees or service charges; and (3) enjoin Frontier from representing to members of the public that its own discretionary service charges are taxes, charges imposed to recover costs billed to Frontier by the government, pass-through government costs, government or regulatory fees, or charges over which Frontier has no control.

146.  Plaintiff seeks an order granting restitution to Plaintiff and Class members in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

## **PRAYER FOR RELIEF**

**Public Injunctive Relief:**

A.     In order to prevent injury to the general public, Plaintiff David Massaro individually, and as a private attorney general, requests that the Court enter a public injunction against Frontier under the CLRA, FAL, and UCL as follows:

1.     Permanently enjoin Frontier from falsely advertising the prices of its service plans to members of the general public;

2.     Permanently enjoin Frontier from advertising or quoting a service plan price to members of the general public if that price does not include all applicable discretionary monthly service fees or charges such as the Internet Infrastructure Surcharge, the VoIP Administrative Fee, or the Sports/Broadcast TV Fee;

3.     Permanently enjoin Frontier from advertising or representing that the prices of its service plans are fixed and will not increase during a specified promotional period, if Frontier in fact reserves the right to increase the service price during that period by increasing discretionary monthly service charges such as the Internet Infrastructure Surcharge, the VoIP Administrative Fee, or the Sports/Broadcast TV Fee;

4.     Permanently enjoin Frontier, including Frontier sales and customer service agents, from representing or stating to members of the general public that its own discretionary monthly service fees or charges, such as the Internet Infrastructure Surcharge, the VoIP Administrative Fee, or the Sports/Broadcast TV Fee, are any of the following: (a) a tax; (b) a charge imposed to recover costs billed to Frontier by federal, state, or local governments; (c) a pass-through government cost; (d) a government or regulatory fee; or (e) a charge over which Frontier has no control; and

5.     Retain jurisdiction to monitor Frontier's compliance with the permanent public injunctive relief requested hereinabove.

CLASS ACTION COMPLAINT

**Individual And Class Relief:**

B. On behalf of himself and the proposed Class, Plaintiff requests that the Court order relief and enter judgment against Frontier as follows:

1. Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiff and his counsel to represent the Class;

2. Order that the discovery rule applies to extend any applicable limitations periods (and the corresponding class periods) for the Class and Subclasses to the dates on which Frontier first began charging the Internet Infrastructure Surcharge; the VoIP Administrative Fee; or the Broadcast TV Surcharge or the Regional Sports Fee, respectively;

3. Declare that Frontier's conduct alleged herein violates the CLRA, FAL, and UCL;

4. Order disgorgement and/or restitution, including, without limitation, disgorgement of all revenues, profits and/or unjust enrichment that Frontier obtained, directly or indirectly, from Plaintiff and Class members as a result of the unlawful conduct alleged herein;

5. Order Frontier to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

6. Grant such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff David Massaro, individually, as a private attorney general to protect the general public, and as a class representative on behalf of all others similarly situated, demands a trial by jury on all issues so triable.

DATED this 13th day of July, 2022.

Presented by:

HATTIS & LUKACS

By: _____
Daniel M. Hattis (SBN 232141)

- 37 -

Paul Karl Lukacs (SBN 197007)
HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171
Email: dan@hattislaw.com
Email: pkl@hattislaw.com

*Attorneys for Plaintiff David Massaro
And the Proposed Classes*

- 38 -